RECEIVED
IN LAKE CHARLES, LA

MAY - 3 2012

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **LEISHA BERTRAND** | : | **DOCKET NO. 2:10 CV 867** |
| **VS.** | : | **JUDGE MINALDI** |
| **CITY OF LAKE CHARLES** | : | **MAGISTRATE JUDGE KAY** |

## OPINION

The plaintiff, Leisha Bertrand, brought this lawsuit against her former employer, the City of Lake Charles, under the Family and Medical Leave Act of 1993 ("FMLA") and Title VII of the Civil Rights Act of 1964. She alleges that the City interfered with her rights under the FMLA by depriving her of leave guaranteed to her under the Act and by retaliating against her for applying for and taking FMLA leave.[1] She further alleges that her former supervisor, Todd Sherman, sexually harassed her and that the City retaliated against her for reporting the harassment.[2]

This Court presided over a bench trial commencing on January 17, 2012. At the close of the plaintiff's evidence, the City moved for a judgment on partial findings. The court granted the motion with respect to Ms. Bertrand's sexual harassment claims but denied it with respect to her FMLA claims. Both Ms. Bertrand and the City have filed post-trial briefs [Docs. 32 & 33, respectively]. Ms. Bertrand has also moved for reconsideration of the court's order dismissing her sexual harassment claims.[3]

---

[1] Compl. ¶¶ 9-12.

[2] Compl. ¶¶ 2-8.

[3] Pl.'s Post Trial Mem. 17-20.

1

Having carefully considered the evidence presented at trial and the arguments of the parties, the court hereby enters the following findings of fact and conclusions of law.  To the extent that any finding of fact constitutes a conclusion of law, the court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the court hereby adopts it as such.

## FINDINGS OF FACT

### I.    Sexual Harassment

Ms. Bertrand worked as a buyer in the City's Public Works Department from 1982 until February 18, 2009.[4]  From 2003 until the date of her resignation, Ms. Bertrand worked under the direct supervision of Assistant Director of Public Works Todd Sherman.  Ms. Bertrand testified that in 2007, Mr. Sherman began making lewd and suggestive comments about her body and repeatedly inviting her to his home.  She further testified that on several occasions in 2007 and 2008, Mr. Sherman walked into her office grabbing his genitals and stating that he was "hurting in a bad way."  Ms. Bertrand resisted Mr. Sherman's advances, but Mr. Sherman nevertheless continued to harass her until she resigned.  His continued sexual advances humiliated her and interfered with her ability to perform her job.

Former Public Works employee Renee Nelson corroborated Ms. Bertrand's testimony, testifying that she witnessed Mr. Sherman harassing Ms. Bertrand on several occasions.  Ms. Nelson further testified that Mr. Sherman harassed her, as well, by making frequent observations about her breasts, showing her pornography on his computer, and making other obscene remarks of a sexual nature in front of her.

---

[4] Pl.'s Exs. 5, 19.

2

During his trial testimony, Mr. Sherman denied commenting on the appearance of any of his female employees. The court, however, did not find his self-serving testimony to be credible.

The City of Lake Charles Employee Handbook provides a detailed procedure for reporting sexual harassment.[5] It requires any employee who believes she is being harassed to report the harassment to her Department Head, to the Director of Human Resources, or the HR Director's designee.[6]

At trial, Ms. Bertrand admitted that she failed to report Mr. Sherman's inappropriate behavior according to the policy. She testified that she believed that it would have been futile to do so, since she had reported another City employee, Stan Chapman, for sexual harassment in 2001 after he forced her into a room and sexually assaulted her, and the City had failed to take any corrective action. Instead, Ms. Bertrand elected to report Mr. Sherman's behavior to her friend Sally Sawyer, who worked in the City's Human Resources Department.

Ms. Sawyer was not a person designated to receive reports of sexual harassment under the City's policy at any time. She testified that she did not perceive Ms. Bertrand's complaints about Todd Sherman to be attempts to report his behavior to the City. Rather, she believed that Ms. Bertrand was merely confiding in her as a friend. The court accordingly finds that Ms. Bertrand failed to comply with the City's sexual harassment policy by failing to report Mr. Sherman's behavior to a proper party.

## II.   FMLA

Ms. Bertrand suffers from Crohn's Disease.[7] Crohn's Disease is a gastrointestinal

---

[5] Pl.'s Ex. 1, City of Lake Charles Employee Handbook 37.

[6] *Id.*

[7] Pl.'s Ex. 30, Dr. Robin Rougeau Dep. at p. 13:2-3.

disorder that manifests itself in intermittent "flare-ups" that occur at irregular intervals throughout a person's life.[8] Ms. Bertrand's Crohn's Disease flare-ups often rendered her unable to work for several days at a time. As a result, she took intermittent leave under the FMLA on multiple occasions between her diagnosis in 2001 and her resignation in 2009.[9] The City does not dispute that it is subject to the FMLA or that Ms. Bertrand was an eligible employee within the meaning of the statute at all times pertinent to this litigation.

Tanya Simmons formerly worked in the City's Human Resources Department. She testified that she served as the City's FMLA Coordinator from approximately 1996 until December of 2006. During that time, she was responsible for compiling employee applications for FMLA leave and for maintaining the City's FMLA records.

Ms. Simmons testified that on one occasion in approximately 2006, when Human Resources Director Wendy Goodwin learned that Ms. Bertrand had requested a day of FMLA leave, Ms. Goodwin instructed Ms. Simmons to bring her Ms. Bertrand's FMLA file. Ms. Goodwin placed the file in her desk drawer, and Ms. Simmons overheard her remark, "I've had it with that bitch." According to Ms. Simmons, Ms. Goodwin retained custody of the folder at least until Ms. Simmons gave up her responsibilities as FMLA Coordinator at the end of 2006.

Ms. Goodwin denied making any such statement and further testified that Ms. Simmons was permanently relieved of her responsibilities as FMLA Coordinator 2001. She therefore maintains that Ms. Simmons did not have any involvement with Leisha Bertrand's FMLA file in 2006. In support of Ms. Goodwin's testimony, the City points to several FMLA notices sent to Ms. Bertrand between 2001 and 2004 that bear the signature of either Sally Sawyer and Kelley

---

[8] *Id.* at 9:23-10:12, 34:25-35:1.

[9] *See* Pl.'s Ex. 20; Def.'s Exs. 106-112.

4

Smith.[10] It asserts that these notices expose Ms. Simmons' testimony as implausible by suggesting that if Ms. Goodwin had in fact requested Ms. Bertrand's file in 2006, either Sally Sawyer or Kelley Smith, and not Tanya Simmons, would have brought it to her.

The court, however, did not find Ms. Goodwin's testimony to be credible. Moreover, the fact that Kelley Smith and Sally Sawyer both sent letters regarding FMLA leave to Ms. Bertrand between 2001 and 2004 does not foreclose the possibility that Ms. Simmons was also involved with Ms. Bertrand's FMLA file at that time. The court therefore credits Ms. Simmon's testimony.

At some point in December of 2008, Ms. Goodwin assumed personal responsibility for annotating Ms. Bertrand's FMLA records. Ms. Goodwin testified that she did so because Sally Sawyer, who was serving as the City's FMLA coordinator at that time, told Ms. Goodwin that she no longer felt comfortable working on Ms. Bertrand's file. At that time, Ms. Sawyer had served as the City's FMLA coordinator for approximately two years. Ms. Goodwin could not provide any explanation for Ms. Sawyer suddenly becaming uncomfortable with working on Ms. Bertrand's file in December of 2008. The City had an opportunity to question Ms. Sawyer about her reasons for turning Ms. Bertrand's file over to Ms. Goodwin, but it neglected to do so. The Court therefore does not find Ms. Goodwin's explanation for her assumption of responsibility for Ms. Bertrand's FMLA file in December of 2008 to be credible.

Ms. Bertrand experienced a severe flare-up of her Crohn's Disease symptoms from the end of 2008 through beginning of 2009. As a result, she took FMLA leave on six days in November of 2008, on all but three days in December of 2008, and on every day in 2009 until her resignation on February 18. During this time period, Ms. Bertrand saw her treating

---

[10] See Def.'s Post Trial Brief 7-8 (citing Def.'s Exs. 106-112).

physician, Dr. Robin Rougeau, regularly, and Dr.  Rougeau excused her from work on a day-by-day basis until January 22, 2009.  On that date, Dr. Rougeau signed a note stating that Ms. Bertrand would be unable to return to work until February 23, 2009.[11]  Until Dr. Rougeau issued this note, the City required Ms. Bertrand to call Mr. Sherman each morning she was absent to inform him that she would be unable to work that day.[12]

Ms. Goodwin charged Ms. Bertrand with eight hours of FMLA leave on each of three City holidays in 2008 and 2009: December 26, 2008, January 1, 2009, and January 19, 2009.[13] She did not, however, charge Ms. Bertrand with FMLA leave on December 25, 2008, which was also a City holiday.

Because Ms. Goodwin charged these holidays against Ms. Bertrand's leave entitlement, she determined that Ms. Bertrand's FMLA leave expired on February 18, 2009.[14] Accordingly, she sent Ms. Bertrand a letter dated February 10, 2009 stating the City would terminate Ms. Bertrand's employment unless she returned to work on February 19, 2009.[15]  Ms. Bertrand was unable to return to work on that date and consequently was forced to resign on the afternoon of February 18, 2009.[16]

If Ms. Goodwin had not counted the December 26, 2008 and January 1, 2009 holidays against Ms. Bertrand's leave entitlement, her leave would not have expired until February 23,

---

[11] Pl.'s Ex. 19, at 148-152, 165, 167, 169, 172, 177.

[12] Pl.'s Ex.14, at 158.

[13] Pl.'s Ex. 17.

[14] *See id.*

[15] Pl.'s Ex.

[16] *See* Pl.'s Ex. 19.

2009.[17]  Based on Dr. Rougeau's recommendation, the court finds that it is more likely than not

that Ms. Bertrand would have returned to work on that date.

The City of Lake Charles Employee Handbook provides two methods for employees who

have exhausted their leave under the FMLA to obtain additional time off.  Under the Donation of

Paid Leave program, an employee suffering from long-term illness may receive up to 200 hours

of paid leave time donated from other employees by submitting a written request to Human

Resources.[18]  Ms. Bertrand sent a letter to Wendy Goodwin requesting donated leave on

December 7, 2008.[19]

On December 30, 2008, Ms. Goodwin responded that donated leave could not be applied

intermittently and was only available to employees out on continuous leave.[20]  The City's

Employee Handbook does not reflect any such restriction.  Ms. Bertrand requested a meeting to

discuss the issue with City Administrator John Cardone.[21]  Ms. Goodwin promised to set up a

meeting, but as of January 6, 2009, she had not done so.[22]  Ms. Bertrand withdrew her request for

donated leave on January 7.[23]

The City's Employee Handbook also provides that an employee with ten or more years of

continuous service with the City who becomes physically incapacitated may be granted an

---

[17] *See id.*

[18] Pl.'s Ex. 1, City of Lake Charles Employee Handbook 22.

[19] Pl.'s Ex. 12.

[20] Pl.'s Ex. 14.

[21] *Id.*

[22] *See id.*

[23] Pl.'s Ex. 15.

7

unpaid leave of absence of up to six months.[24]  Ms. Bertrand sent an email to John Cardone, Wendy Goodwin, and Mayor Randy Roach requesting an unpaid leave of absence on February 5, 2009.[25]  No one from the City responded to the request, and the City has not come forward with any explanation for why the request was not granted.

As a direct result of the City's decisions to disregard Ms. Bertrand's request for an unpaid leave of absence and to charge three holidays against her FMLA leave entitlement, Ms. Bertrand was forced to resign from her position with the City on February 19, 2009.[26]  At the time of her resignation, Ms. Bertrand's total annual salary was $51,314. [27]  The City also contributed $260 per year towards a health club membership for Ms. Bertrand's family and provided her with health and life insurance.[28]  Ms. Bertrand spent a total of $4936.00 to replace the health insurance coverage she lost as a result of her termination.[29]

The Social Security Administration (SSA) found Ms. Bertrand to be disabled as of June 1, 2010.[30]  The court finds, in accordance with the determination of the Social Security Administration, that Ms. Bertrand became unable to return to her position as a Buyer III with the City or to perform any other type of substantial gainful activity on that date.  Ms. Bertrand's lost wages and health club benefits between February 19, 2009 and June 1, 2010 total $65,986.46.

---

[24] The City of Lake Charles Handbook 21-22.

[25] Pl.'s Ex. 16.

[26] *See* Pl.'s Exs. 16, 17.

[27] *See* Pl.'s Ex. 29.

[28] *Id.*

[29] *Id.*

[30] Def.'s Ex. 103, Leisha Bertrand Dep. 8:4-10, Sep. 21, 2010.

On February 9, 2012, the City approved Ms. Bertrand's application for disability retirement and awarded her retirement benefits in the amount of $1449.15 per month, beginning on March 1, 2009.[31]  Ms. Bertrand's retirement benefits for the period between March 1, 2009 and June 1, 2010 total $ 21,737.

## CONCLUSIONS OF LAW

### I.    Jurisdiction

Ms. Bertrand's claims arise under the Civil Rights Act of 1964 and the Family and Medical Leave Act of 1993. This court therefore has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

### II.    Title VII Sexual Harassment

Where, as here, an employee has not suffered any tangible employment action as a result of sexual harassment, an employer may avoid vicarious liability for the actions of a supervisor by showing (1) that it exercised reasonable care to prevent and promptly correct sexual harassment and (2) that the employee unreasonably failed to take advantage of any preventative or corrective measure provided to her or to otherwise avoid harm. *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *Burlington Indus. v. Ellerth*, 524 U.S. 742, 765 (1998).  The defendant bears the burden of showing that the plaintiff acted unreasonably. *Ellerth,* 524 U.S. at 765.

The court heard credible testimony from multiple witnesses of pervasive sexual harassment within the City's Public Works Department.  The reprehensible behavior of Todd Sherman and of other supervisors within the department created a threatening and humiliating work environment for Ms. Bertrand and for many other employees.  Now that this situation has come to light, the court feels confident that the City will take prompt action to address it.

---

[31] Pl.'s Supp. Post-Trial Mem. Ex. B

However, the court also finds that the City of Lake Charles exercised reasonable care to prevent sexual harassment by implementing procedures to encourage and facilitate employee reports of harassment. Ms. Bertrand unreasonably failed to take advantage of these procedures by failing to report Mr. Sherman's behavior to the proper authorities.  Accordingly, Ms. Bertrand's request for reconsideration of the court's order dismissing her sexual harassment claims is DENIED.

### III.   FMLA

The FMLA creates two claims for employees who allege that their rights under the statute have been violated: (1) interference claims, whereby an employee asserts that her employer denied or otherwise interfered with her substantive rights under the FMLA, and (2) retaliation claims, whereby an employee asserts that her employer discriminated against her because she engaged in activity protected by the FMLA. *See O'Connor v. PCA Family Health Plan, Inc.,* 200 F.3d 1349, 1352 (11th Cir. 2000).  Ms. Bertrand asserts both types of claims in this lawsuit.

### A. **Interference Claim**

The court finds that the City interfered with Ms. Bertrand's rights under the FMLA by improperly counting holidays against her leave entitlement.  The FMLA entitles eligible employees suffering from a "serious health condition" to take a total of 12 weeks of unpaid leave during any twelve month period. 29 U.S.C. § 2612(a)(1)(D) (2009).  In general, only time during which the employee was otherwise scheduled to work may be counted as FMLA leave. *See* 29 C.F.R. § 825.205(b) ("[O]nly the amount of leave actually taken may be counted toward the employee's leave entitlement"); Preamble to the Department of Labor Regulations Interpreting the FMLA, 60 Fed. Reg. 2180, 2203 (January 6, 1995)(interpreting 29 C.F.R. § 825.205(b) to mean that an "employee's FMLA leave entitlement may only be reduced for time which the

employee would otherwise be required to report for duty, *but for the taking of the leave*.")(emphasis in original).

> The Department of Labor regulations provide, however, that:
>
> For purposes of determining the amount of leave used by an employee, the fact that a holiday may occur within the week taken as FMLA leave has no effect; the week is counted as a week of FMLA leave. However, if an employee is using FMLA leave in increments of less than one week, the holiday will not count against the employee's FMLA entitlement unless the employee was otherwise scheduled and expected to work during the holiday. 29 C.F.R. § 825.200(h).

Relying on this regulation, the City argues that because Ms. Bertrand missed the entire weeks of December 22, 2008, December 29, 2008, and January 19, 2009, Ms. Goodwin properly counted the December 26,  January 1, and January 19 holidays against Ms. Bertrand's leave entitlement.

The City's reliance on 29 C.F.R. § 825.200(h) is misplaced.  Although Ms. Bertrand did not work during any of the weeks at issue, the record shows that before January 22, 2009, Dr. Rougeau never excused Ms. Bertrand from work for more than four days at a time.  Until that date, the City required Ms. Bertrand to call Mr. Sherman on a daily basis to apprise him of her status.  Because Ms. Bertrand was therefore "using FMLA leave in increments of less than one week" until January 22, 2009, the court concludes that the City should not have counted the December 26, January 1, and January 19 holidays against her leave entitlement. Accordingly, the court finds that the city violated 29 U.S.C. § 2615(a) by denying Ms. Bertrand 24 hours of leave to which she was entitled under the FMLA.

### B. Retaliation Claim

The FMLA prohibits employers from penalizing employees for exercising their rights under the statute.  42 U.S.C. § 2612(a)(2).  In the absence of direct evidence,[32] a plaintiff

---

[32] Direct evidence is "evidence which, if believed proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 897 (5th Cir. 2002). Ms. Bertrand argues that Ms. Goodwin's comment to the effect that she had "had it"

asserting a claim for retaliation under the FMLA must first show establish a *prima facia* case by proving that (1) she engaged in activity protected under the FMLA; (2) she suffered an adverse employment action; (3) and a causal connection exists between the protected activity and the adverse employment action taken against her. *Hunt v. Rapides Healthcare System, L.L.C.*, 277 F.3d 757, 768 (5th Cir. 2001). Close timing between a protected activity and an adverse employment action may establish the causal link required to make out a *prima facie* case of retaliation where the actions occur "very closely" in time. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001).

Once the plaintiff has carried her burden of establishing a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000). If the employer meets its burden, the burden of persuasion shifts backs to the plaintiff to demonstrate that her employer's articulated reason for its actions is merely a pretext for unlawful retaliation. *Id.*

The court finds that Ms. Bertrand has established a *prima facie* case of retaliation. The parties do not dispute that Ms. Bertrand engaged in a protected activity by requesting leave under the FMLA. The City took adverse employment actions against Ms. Bertrand when it denied her request for a leave of absence and when it counted holidays against her FMLA leave entitlement. Because the City took these actions while Ms. Bertrand was exercising her rights under the FMLA, the court finds that the temporal proximity between Ms. Bertrand's request for FMLA leave and the City's adverse employment actions against her establishes a causal link.

---

with Ms. Bertrand constitutes direct evidence of retaliation. The court finds, however, that because Ms. Goodwin did not actually state that she intended to take any retaliatory action against Ms. Bertrand, the remark is not specific enough to qualify as direct evidence.

Ms. Goodwin testified that she counted holidays against Ms. Bertrand's FMLA leave because she interpreted Department of Labor regulations to require her to do so. The court finds this explanation unconvincing in light of the fact that Ms. Goodwin did not charge Ms. Bertrand with FMLA leave on December 25, 2008, which was also a City holiday. Rather, based upon Ms. Goodwin's statement to the effect that Ms. Bertrand's request for FMLA leave was "it for her" and upon Ms. Goodwin's apparent mendacity in explaining why she took personal responsibility for annotating Ms. Bertrand's FMLA file and why she declined to grant Ms. Bertrand's request for donated leave, the court finds that it is more likely than not that Ms. Goodwin intended to retaliate against Ms. Bertrand for taking FMLA leave by preventing her from returning to work when she medically certified to do so.

The City has provided no explanation for why it ignored Ms. Bertrand's request for a leave of absence. The court finds that it is more likely than not that the City decided to disregard the request in retaliation for Ms. Bertrand's exercise of her FMLA rights. Ms. Bertrand has therefore carried her burden of proving that the City discriminated against her for taking FMLA leave, in violation of 29 U.S.C. § 2615(a)(2).

### C. Damages

Having concluded that the City violated the FMLA and that Ms. Bertrand lost her job as a result of its actions, the court now turns to Ms. Bertrand's damages. The FMLA section on damages provides that any employee who proves that her employer violated the FMLA shall be entitled to damages equal to the amount of wages, benefits, or other compensation she lost as a result of the violation, plus interest, costs, and reasonable attorney's fees. 29 U.S.C. § 2617(a)(1), (3) (2009). Unless the defendant can show that it acted in good faith, the injured

employee is also entitled to recover liquidated damages equal to the amount of the employee's lost compensation, plus interest. *Id.* § 2617(a)(1).

The ultimate goal in computing damages for employment discrimination is to restore the injured worker to the economic position she would have enjoyed but for the discrimination. *See Albemarle Paper Co. v. Moody*, 422 U.S. 405, 419-421 (1975); *Palasota v. Haggar Clothing Co.,* 499 F.3d 474, 482-83 (5th Cir. 2007). Therefore, as a general rule, a plaintiff may not recover back wages during a period of disability, because the disability would have prevented the plaintiff from earning wages during that period even if the discrimination had not occurred. *Stephenson v. Nokia Inc.*, No. 06-2204, 2008 U.S. Dist. LEXIS 36574 at *30 (N.D. Tex. May 1, 2008). Accordingly, the court holds that Ms. Bertrand may not recover lost wages for any period after she became disabled on June 1, 2010. Moreover, the court finds that Ms. Bertrand's disability makes reinstatement to her position with the City impossible.

The defendants have argued that Ms. Bertrand failed to mitigate her damages by failing to exercise reasonable diligence in seeking alternative employment between her resignation from the City and the date on which she became disabled. The City has the burden of proving that Ms. Bertrand failed to mitigate her damages by establishing (1) that substantially equivalent work was available and (2) that Ms. Bertrand failed to exert reasonable effort to obtain it. *Morgan v. Neiman-Marcus Group,* No. 05-79, 2005 U.S. Dist. LEXIS 34541 at *9 n.10 (N.D. Tex. 2005).[33] The City failed to present any evidence that alternative employment was

---

[33] The court notes that the Fifth Circuit stated in *West v. Nabors Drilling USA, Inc.,* 330 F.3d 379, 393 (5th Cir. 2003) that if an employer proves an employee has not made reasonable efforts to obtain work, the employer need not establish the availability of substantially comparable employment. This decision, however, conflicts with the Fifth Circuit's earlier decision in *Sparks v. Griffin,* 460 F.2d 433, 443 (5th Cir. 1972). One appellate panel may not overrule a prior panel absent an *en banc* reconsideration. *United States v. Dial,* 542 F.3d 1059, 1060 (5th Cir. 2008).

14

reasonably available to Ms. Bertrand following her termination. It therefore has not carried its burden of showing that Ms. Bertrand failed to mitigate her damages.

Accordingly, the court finds that Ms. Bertrand is entitled to recover $65,986.46 in lost wages and health club benefits for the period between February 19, 2009 to June 1, 2010. The measure of damages for lost insurance benefits in FMLA cases is either the employee's actual replacement cost for the insurance or the expenses the employee actually incurred that would have been covered under a former insurance plan. *Lubke v. City of Arlington*, 455 F.3d 489, 498 (5th Cir. 2006). Therefore, Ms. Bertrand will also recover the $4936.00 she spent on health insurance as a result of her termination.

The Fifth Circuit has held that an employer may offset the damages it owes to an employee under the FMLA by the employer's portion of any retirement plan payout made to the employee after her termination. *Lubke*, 455 F.3d at 499-500. The record does not contain sufficient information for the court to determine what portion of Ms. Bertrand's retirement benefit is attributable to contributions by the City. The parties will therefore be ordered to prepare briefs on this issue. Once the court has ascertained what amount of the $21,737 Ms. Bertrand received in retirement benefits for the period between March 1, 2009 and June 1, 2010 may properly be attributed to the City's contributions, that amount will subtracted from Ms. Bertrand's damages for lost compensation.

Because the court finds that the City did not act in good faith, Ms. Bertrand is also entitled to an award of liquidated damages in the total amount of her lost wages and benefits. Liquidated damages under the FMLA include wages that are temporarily lost but are restored by

When a district court is faced with conflicting panel opinions, the earlier opinion controls. *Id.* Therefore, this court will follow *Sparks*.

the employer after a significant delay. *Jordan v. United States Postal Serv.*, 379 F.3d 1196, 1201

(10th Cir. 2004).  Because the City did not award Ms. Bertrand disability retirement benefits

until almost three years after it unlawfully terminated her employment, the court will not deduct

Ms. Bertrand's retirement benefits from her liquidated damages award.   Accordingly, the City

will pay $70,922.46 in liquidated damages, representing an amount equal to Ms. Bertrand's lost

wages and health club benefits plus her replacement costs for health insurance coverage.

Pursuant to 29 U.S.C. § 2617(a)(3), Ms. Bertrand is entitled to recover attorney's fees,

reasonable expert witness fees and other costs of the action.  The court will also award pre- and

post-judgment interest at a rate calculated according to 28 U.S.C. § 1961.

### CONCLUSION

Based upon the above and foregoing, the court finds in favor of the plaintiff, Leisha

Bertrand, and against the defendant, the City of Lake Charles, with respect to Ms. Bertrand's

FMLA claims. The parties will be ordered to submit briefs and supporting documentation to

assist the court in determining the portion of Ms. Bertrand's retirement benefits attributable to

contributions by the City.  Ms. Bertrand will also be directed to file a Motion for Attorney's

Fees.  Thereafter, Judgment will be entered against the City.

Lake Charles, Louisiana, this __3__ day of ___May_____ 2012.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE